NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 36

No. 25-AP-303

| | |
|---|---|
| Christopher Huber | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Janet Currie et al. | June Term, 2026 |

David A. Barra, J.

Lesley B. Deppman of Deppman Law PLC, Middlebury, for Plaintiff-Appellee.

Jason Scott Coupal of Landmark Legal, Rutland, for Defendants-Appellants.


PRESENT: Reiber, C.J., Eaton, Waples, Nolan and Drescher, JJ.


¶ 1.    **WAPLES, J.**   Defendants Janet Currie, 57 Sanford Street LLC, and Valley Stock Farm LLC,[1] appeal from the trial court's order denying their motion to vacate a partial summary-judgment ruling in favor of plaintiff Christopher Huber on his breach-of-contract claim. The court declined to address defendants' argument that Huber had unlawful intent to charge an interest rate that exceeded statutory rates. On appeal, defendants argue that the court erred in enforcing the contract and in imposing an equitable lien on their property. Separately, they assert the court

---

[1] In the proceedings below, defendants' submissions were filed by both Currie individually and defendants collectively. For clarity, this opinion refers to Currie as the filer of defendants' submissions. This designation does not affect our analysis.

improperly neglected to rule on their claims against third-party defendants. We affirm the court's judgment in favor of Huber and remand for the court to consider defendants' third-party claims.

¶ 2. Some background on the applicable statutes is helpful to understand the issues in this case. Title 9, Chapter 4 of the Vermont Statutes sets forth legal rates of interest for various kinds of loans. As relevant here, 9 V.S.A. § 41a(a) provides that "the rate of interest or the sum allowed for forbearance or use of money shall be 12 percent per annum."[2] When a contract "stipulates for the payment of more than lawful interest," the contract is usurious. Farnsworth v. Cochran, 125 Vt. 174, 181, 212 A.2d 818, 823-24 (1965) ("A contract is usurious when any . . . charge is exacted or required by the lender in excess of the money actually loaned, which, in addition to the interest stipulated, renders the return to the lender greater than the lawful rate of interest.").

¶ 3. Section 50 establishes consequences for usurious contracts in different situations.[3] As relevant here, § 50(b) applies where the lender has "knowingly or willfully ma[d]e any contract, express or implied, that directly or indirectly calls for the payment of any interest . . . in excess of the legal rate as set forth in [§ 41a]." This unlawful intent "knowingly to contract for, or to take usurious interest" constitutes "usury within the prohibition of the law." Farmers' Bank v. Burchard, 33 Vt. 346, 370 (1860); see Lowell & Austin, Inc. v. Truax, 146 Vt. 448, 452, 507 A.2d 949, 951 (1985) (clarifying usury exists not when "the [lender] intended to make the charges it did, but" when lender intended "to exact from [the borrower] an amount in excess of what was permitted by law"). "[W]hen the contract on its face is for legal interest only, then [usury] must

---

[2] Additionally, 9 V.S.A. § 41a(b)(7) establishes that for a loan "secured by a subordinate lien against real estate, the interest rate shall not exceed 18 percent per annum." We need not reach whether 12% or 18% interest applies here because the outcome is the same either way.

[3] Section 50(a) allows a party who has paid more than the statutory legal rate to "recover the amount so paid above the legal interest, with interest thereon from the time of payment and all expenses of collection." Section 50(c) establishes penal provisions, including fines of up to $1000 and one year imprisonment.

2

be proved"; however, when the "contract, upon its very face, imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent." Farmers' Bank, 33 Vt. at 370. If the borrower establishes usury in violation of § 50(b), the lender may "collect only one-half of the principal" and may not "collect any interest." 9 V.S.A. § 50(b).

¶ 4. The record establishes the following facts. In 2019, Currie sought to purchase 57 Sanford Street LLC, a company operating a hemp business at 57 Sanford Road in Orwell, Vermont, for $225,000. To secure this purchase, Currie entered a contract with Huber for partial payment in October 2019. The contract provided that Huber would loan Currie $185,000; in exchange, Currie would repay Huber twice the loan's principal by April 2020, totaling a sum of $370,000 to be paid over approximately six months. This corresponded to an interest rate of 200% per annum. The contract also set forth Currie's agreement to "draft a mortgage and note to [Huber] to collateralize" his loan with the Orwell property as well as "the proceeds of the hemp harvest."

¶ 5. After purchasing 57 Sanford Street LLC, Currie—who was then the sole member of both 57 Sanford Street LLC and Valley Stock Farm LLC—transferred ownership of the Orwell property to Valley Stock Farm LLC for no consideration. At no point did Currie repay the agreed-upon sum to Huber or draft a mortgage and note collateralizing Huber's loan with the Orwell property despite his repeated communications to her.

¶ 6. In June 2021, Huber filed a complaint against defendants. He argued that Currie had breached the contract and that she had fraudulently transferred the Orwell property to Valley Stock Farm LLC. Among other requested relief, Huber sought judgment against defendants for the contract's full value with interest from the date payment was due and for the imposition of an equitable lien on the Orwell property. Represented by counsel, Currie filed an answer to the complaint, in which she denied all of Huber's substantive allegations and listed thirteen affirmative defenses, including usury, illegality, and unclean hands. Separately, Currie filed a third-party complaint against plaintiff's brother, Scott Huber, as well as David Swanson and Canna Source

3

Group LLC.[4]  Therein, she alleged that she had entered a contract with Scott Huber, David Swanson, and Canna Source Group LLC, but they breached that agreement, leaving her without means to repay plaintiff Christopher Huber.  Currie claimed that she had been defrauded and sought judgment in her favor.

¶ 7.    In September 2023, Huber moved for summary judgment.  He argued he was entitled to judgment on the breach-of-contract claim because Currie conceded that she failed to repay the $185,000 loan with interest as required by the contract.  He also reiterated that Currie engaged in a fraudulent transfer.  Currie—self-represented at the time, as her original counsel had withdrawn—opposed Huber's summary-judgment motion.  In her response, she recounted the procedural history, referencing that she had filed an answer with affirmative defenses, but she did not otherwise argue any affirmative defenses or present facts to support them.

¶ 8.    In December 2023, the court issued an order granting partial summary judgment to Huber on the breach-of-contract claim.  The court concluded that Huber demonstrated that Currie defaulted on repayment of the $185,000 loan and explained that Currie did not properly dispute these facts or support any affirmative defenses with evidence.  The court denied summary judgment on the fraudulent-transfer claim because Huber had not established all elements required under the relevant statute.  See 9 V.S.A. § 2288(a) (listing requirements to void transfer).

¶ 9.    The court held a bench trial over two days in March and April 2025 to resolve the outstanding issues.  Two days before trial, Currie, then having obtained new counsel, moved to vacate the court's December 2023 partial summary-judgment order on the breach-of-contract claim.  She argued the judgment was void because the loan's 200% annual rate of interest exceeded

---

[4]  Scott Huber and David Swanson are co-owners of Canna Source Group LLC, which Currie describes as "a bulk wholesale global hemp CBD supplier."  Currie was unable to serve Scott Huber, and the court dismissed the claims against him without prejudice. Currie successfully served David Swanson and Canna Source Group LLC.  All remaining references to "third-party defendants" refer to only David Swanson and Canna Source Group LLC.

the legal limit in violation of 9 V.S.A. § 41a and § 50(b). After Huber presented his case-in-chief, Currie moved for a directed verdict.[5] There, Currie reiterated her usury argument; stated that she pleaded usury, illegality, and unclean hands as affirmative defenses in her answer to Huber's complaint; and argued that the evidence introduced during Huber's case-in-chief established those affirmative defenses. She claimed that Huber acted with unclean hands in seeking to enforce the facially usurious note and that he was therefore barred from all recovery. Huber opposed Currie's motions, arguing that Currie waived the affirmative defense of usury when she failed to raise it at the summary-judgment stage.

¶ 10. Separately, on both days of trial, Currie sought a default judgment against third-party defendants. At that time, third-party defendants still had not taken any action to respond to Currie's complaint against them or to her several motions to resolve those claims.[6] The court declined to hear evidence on Currie's third-party claims but replied it would address them in writing.

¶ 11. The court allowed the parties to file post-trial memoranda, instructing them to provide their thoughts on "what issues they want the court to decide" and stating that the court would "issue a written order on pretty much everything outstanding that is ripe for ruling." Both parties filed briefs, reiterating their prior arguments. Neither brief mentioned Currie's claims against third-party defendants.

---

[5] The court clarified that a motion for a directed verdict under Vermont Rule of Civil Procedure 50 was not appropriate because no jury verdict was going to be issued but advised that it understood the issues the motion raised and would address the motion.

[6] Currie filed a motion for default judgment against third-party defendants, after which the court considered the pleadings closed. Currie subsequently filed additional motions. In response the court acknowledged that third-party defendants were "clearly in default" but denied the motions due to procedural reasons or other insufficiencies. At trial, the third-party claims were still outstanding.

¶ 12. In July 2025, the court issued an order denying Currie's motions. As relevant here, it concluded that Currie waived[7] the affirmative defense of usury by failing to address it in her response to Huber's summary-judgment motion. The court did not reach whether Huber demonstrated unlawful intent under § 50(b), explaining that considering the merits of Currie's usury argument would improperly give her a second chance at opposing summary judgment. The court entered judgment for Huber for $185,000 with pre- and post-judgment interest, but it set the interest at the statutory rate of 12% per annum. The court also placed an equitable lien on the Orwell property. The court did not address Currie's claims against third-party defendants. Currie appealed.

¶ 13. On appeal, Currie argues that the trial court erred in concluding she waived the usury defense and in awarding Huber the full value of the contract with interest instead of limiting recovery to half the principal without interest pursuant to § 50(b). Currie also asserts the court erroneously imposed an equitable lien on the Orwell property despite Huber's alleged unclean hands. Finally, Currie argues the court erred in neglecting to issue a ruling on her claims against third-party defendants.

---

[7] We clarify the distinction between how the term "waiver" may be used in the criminal and civil contexts. In the criminal context, "waiver" requires "proof of a voluntary and intentional relinquishment of a known and enforceable right," and any issues that a party waives do not receive appellate review. State v. Gurung, 2025 VT 52, ¶ 9, __ Vt. __, 346 A.3d 459 (quotation omitted). Forfeiture involves a party's "failure to make the timely assertion of a right" and may be reviewed "for plain error." Id. ¶¶ 6, 8 (quotation omitted). In the civil context, we have used "waiver" where a party failed to preserve issues in compliance with procedural rules. State of Vt. Agency of Nat. Res. v. Parkway Cleaners, 2019 VT 21, ¶ 45, 209 Vt. 620, 210 A.3d 445 (describing issue not raised at summary-judgment stage as "waived"). Generally, we do not review unpreserved issues in civil cases. Follo v. Florindo, 2009 VT 11, ¶ 16, 185 Vt. 390, 970 A.2d 1230 (explaining this Court "considers plain error in civil cases only in limited circumstances," such as when fundamental rights or liberty interests are "at stake in a quasi-criminal or hybrid civil-criminal probation hearing"). The trial court here used "waiver" in keeping with our past civil cases in concluding that Currie waived the affirmative defense of usury through failing to comply with procedural rules and in declining to review the merits of the issue.

¶ 14. Because "[t]he trial court has discretion to revise its order adjudicating fewer than all the claims at any time before the entry of judgment adjudicating all the claims," we review the court's decision not to disturb its summary-judgment ruling on the breach-of-contract claim for an abuse of discretion. Bostock v. City of Burlington, 2011 VT 89, ¶ 14, 190 Vt. 582, 30 A.3d 651 (mem.) (reviewing trial court's "decision not to revise its ruling awarding summary judgment" for abuse of discretion); see V.R.C.P. 54(b) (providing "any order . . . which adjudicates fewer than all the claims . . . shall not terminate the action," and order "is subject to revision at any time before the entry of judgment adjudicating all the claims").

¶ 15. The trial court acted within its sound discretion in declining to amend its summary-judgment ruling given Currie's failure to raise usury in response to Huber's motion for summary judgment. "Usury is an affirmative defense." Vineyard Brands, Inc. v. Oak Knoll Cellar, 155 Vt. 473, 477, 587 A.2d 77, 79 (1990). We have previously held that even if a defendant pleads an affirmative defense in their answer to a complaint, the defendant must reassert the affirmative defense when the plaintiff moves for summary judgment. See Parkway Cleaners, 2019 VT 21, ¶ 45 (holding that although defendant raised affirmative defense in his answer to State's complaint, he waived defense because he did not reassert it in opposition to State's summary-judgment motion).[8] If the defendant raises a defense after the court awards summary judgment that the

---

[8] Currie attempts to distinguish Parkway Cleaners on the ground that it "did not involve the enforcement of an instrument that was illegal as a matter of law, and the affirmative defense sought to be interposed was the statute of limitations." This argument is unpersuasive. First, as explained below, usury is an affirmative defense that may be procedurally waived, even as applied to a facially usurious contract, and in some situations, usurious contracts may be enforced up to the legal rate of interest. Infra, ¶ 21. Second, the nonmoving party is obligated to raise any grounds for opposing judgment in the moving party's favor in response to the motion for summary judgment, regardless of what those specific grounds are. In Parkway Cleaners, the defendant raised the statute of limitations as an affirmative defense in his answer to the State's complaint but did not reassert it in response to the State's summary-judgment motion. 2019 VT 21, ¶ 6. The court entered partial summary judgment, and the defendant later moved to reopen the court's summary-judgment ruling to pursue the statute-of-limitations defense. The court denied the motion, and we held that this denial was not an abuse of discretion. Id. ¶¶ 8, 45. We explained that the "[d]efendant cannot use a motion to reconsider to raise a wholly new theory that should

7

defendant could have but did not raise earlier, the court retains discretion to decline to address the argument. Id.; see Zlotoff Found., Inc. v. Town of South Hero, 2020 VT 25, ¶ 26, 212 Vt. 63, 231 A.3d 1146 (explaining trial court "acted within its discretion in declining to consider" new argument after granting summary judgment on other grounds "because there was no reason that the Town could not have raised it earlier"); Campbell v. Stafford, 2011 VT 11, ¶ 17, 189 Vt. 567, 15 A.3d 126 (mem.) (holding trial court did not abuse its discretion in denying motion to reconsider summary judgment where motion relied on new theory that could have been raised before court awarded summary judgment to defendants).

¶ 16.    This is so, in part, because the defendant's burden at the summary-judgment stage is higher than it is at the pleading stage. At the pleading stage, "[s]imply stating an affirmative defense in the answer . . . is sufficient." Mintz v. Matalon, 148 Vt. 442, 444, 535 A.2d 783, 785 (1987) (explaining "requirements for pleading an affirmative defense under Rule 8(c)" are minimal, and "statement of particular grounds is not required in pleading an affirmative defense"). However, in response to a summary-judgment motion, a defendant "may not rest upon the mere allegations or denials of the[ir] pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Kelly v. Town of Barnard, 155 Vt. 296, 299, 583 A.2d 614, 616 (1990) (quotation omitted); see V.R.C.P. 56(e) (permitting court to grant summary judgment if party fails to properly support assertion of fact or address another party's assertion of fact); V.R.C.P. 56(c)(2) (listing nonmovant's requirements in response to motion for summary judgment).

¶ 17.    Here, Currie's opposition to Huber's motion for summary judgment did not assert usury or any other affirmative defenses; it only generally referenced her answer and her list of affirmative defenses. Although Currie argues that her opposition "reincorporated" the affirmative

---

have been raised before the court granted summary judgment." Id. ¶ 45 (quotation omitted). This reasoning applies with equal force here. Having failed to raise her affirmative defense in response to Huber's motion for summary judgment, the court acted within its discretion in declining to provide her another opportunity to do so.

defenses she pleaded in her answer, her answer simply stated that "any alleged loan made by the Plaintiff was usurious" without any supporting facts. As explained above, at the summary-judgment stage, Currie's opposition "may not rest upon the mere allegations or denials of [her] pleading" but rather required citations to facts in the record. Kelly, 155 Vt. at 299, 583 A.2d at 616 (quotation omitted). The court did not abuse its discretion in determining that her answer's bare conclusory statement did not meet this threshold. Because Currie failed to reassert usury and provided no reason for this failure, the court did not err in declining to address the merits of her argument. See Campbell, 2011 VT 11, ¶ 17 (denying motion to reconsider without addressing merits when motion raised new theory, and "[t]here was no reason that the theory had not been raised before summary judgment was awarded").

¶ 18. Currie's status as a self-represented party at the time of summary judgment does not alone require reversal. Currie contends that the court did not "need[] to look very far" to find the facially usurious contract, and that "[t]he evidence that the court needed was always there." However, "it is not the trial court's responsibility to offer affirmative help to a pro se litigant." Nevitt v. Nevitt, 155 Vt. 391, 401, 584 A.2d 1134, 1140 (1990). And, while we afford pro se litigants some leeway, "[t]he court does not abuse its discretion where it enforces the rules of civil procedure equitably, even against a pro se litigant." In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 22, 188 Vt. 262, 6 A.3d 713 (quotation omitted). The court here considered all the facts—including Currie's lack of representation, the extended time she was granted to file her response to the summary-judgment motion, the contents of her response, and the eight months it took Currie's new counsel to file the motion to vacate after his initial appearance—in deciding whether to reconsider its summary-judgment ruling. Its decision not to do so on the grounds that Currie failed to meet Rule 56's requirements and that reopening the ruling would improperly give Currie a second chance at opposing summary judgment was not an abuse of discretion. Cf. Adamson v.

9

Dodge, 174 Vt. 311, 327, 816 A.2d 455, 468 (2002) ("Interests of finality require that relief from a previous judgment be granted only in extraordinary circumstances.").

¶ 19. Currie argues that because the challenged contract was facially usurious, Huber's unlawful intent was established without any need for factual development. She asserts that, given this unlawful intent, the court was independently obligated to impose the § 50(b) penalty for usury regardless of whether she appropriately raised usury. However, because usury is an affirmative defense, how usury is pleaded and litigated before the trial court is material. Concluding that a court is independently required to impose the § 50(b) penalty for usury would render meaningless usury's characterization as an affirmative defense and all attendant procedural requirements for properly raising and maintaining affirmative defenses.

¶ 20. Currie's reliance on the California case Lewis & Queen v. N. M. Ball Sons, 308 P.2d 713 (Cal. 1957), is unpersuasive. In Lewis & Queen, the plaintiff and the defendant entered various contracts pertaining to the construction of a parkway, including an "equipment rental agreement" in which the plaintiff agreed to provide the defendant with construction equipment for road excavation. Id. at 715. The plaintiff sued for breach of the equipment-rental agreement and requested the reasonable rental value of the equipment that was allegedly held beyond the agreed-upon term. However, because the plaintiff acted as a contractor without first obtaining a license required by statute, the trial court concluded—and the California Supreme Court affirmed—that the plaintiff was barred from maintaining any action for compensation. Id. at 716-17, 719. The California Supreme Court explained that "[w]hatever the state of the pleadings, when the evidence shows that the plaintiff in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court . . . may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids." Id. at 717.

¶ 21. The instant case presents very different facts. Unlike the statutory license requirement at issue in Lewis & Queen, usury is an affirmative defense that the borrower must

10

both properly raise in compliance with our procedural rules and substantively establish for the court to impose the § 50(b) penalty. If the borrower does not properly assert a claim for usury, a usurious contract may stand. See Irish v. Clayes, 10 Vt. 81, 85 (1838) (clarifying "[c]ontracts are frequently called void, which are only voidable," and "[a] usurious contract is called void; but it is only so, when it is avoided by the party, on whom the usury is practi[c]ed"); cf. Austin v. Chittenden, 33 Vt. 553, 556-57 (1861) (stating "[usury] laws are for the protection of the borrower only, and he alone can take advantage of the law"). Absent a finding of unlawful intent, a court may enforce a usurious contract up to the legal rate of interest because, for usurious contracts without usury, "[t]he thing forbidden is the excess, and nothing else, and that is what is illegal and void." Farmers' Bank, 33 Vt. at 372 (quotation omitted); see id. at 378 (explaining that when contracts' interest rates exceed legal rate, "the statutes [do not] declare the contracts void, nor provide penalty or forfeiture," but rather contracts "are held to be inoperative for the unlawful excess of interest"); see also 9 V.S.A. § 50(a).

¶ 22. Here, as explained above, the court exercised its discretion in declining to assess whether Huber engaged in usury. The court then enforced the contract but imposed only legal interest, rather than the contract's illegal rate. See Osgood v. Cent. Vt. Ry. Co., 77 Vt. 334, 341, 60 A. 137, 139 (1905) ("The general rule is, where you cannot sever the illegal from the legal part of a contract, that the contract is altogether void; but where you can sever them, whether the illegality be created by statute or by the common law, that you may reject the bad and retain the good."). This judgment is consistent with our precedent and does not contravene public policy, as Currie claims. Vermont has a longstanding "paramount public policy" of allowing parties to freely contract. Id. at 344, 60 A. at 140 (quotation omitted); see id. at 343-44, 60 A. at 140 ("[I]f there is one thing more than another that public policy requires, it is that [persons] of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and be enforced by courts of justice."

11

(quotation omitted)). Under the circumstances of this case, the court did not err in declining to impose § 50(b)'s "harsh penalty" where Currie failed to properly assert the usury defense. Crocker v. Brandt, 130 Vt. 349, 357-58, 293 A.2d 541, 546 (1972) (describing § 50(b)'s precursor statute and explaining "[w]e cannot enforce a law which is against our public policy, neither can we impose a penalty"); see Verizon Wireless Barton Permit, 2010 VT 62, ¶ 22 (explaining "[i]t was not for the trial court to . . . suggest an argument" to parties).

¶ 23.    Currie further challenges the trial court's imposition of an equitable lien against the Orwell property owned by defendant 57 Sanford Street LLC. Currie appears to argue that because Huber engaged in usury, he had unclean hands and is therefore not entitled to equitable remedies.[9] As established above, the court did not reopen the question of whether Huber engaged in usury. Because Currie's claim of unclean hands inextricably depends on her assertion that Huber engaged in usury, we need not resolve whether Huber had unclean hands.

¶ 24.    Currie relies on Shattuck v. Peck, 2013 VT 1, 193 Vt. 123, 70 A.3d 922, to contend that this Court should sua sponte hold that Huber's unclean hands bar his recovery. There, the trial court ruled in favor of the plaintiff and denied the defendant's counterclaim for equitable relief. It declined to credit the defendant's allegation that the plaintiff had fraudulently induced her to transfer properties. The defendant appealed, asserting the court erroneously denied her request for equitable relief. We affirmed the trial court's holding on different grounds. Id. ¶ 17; see Samplid Enters., Inc. v. First Vt. Bank, 165 Vt. 22, 28, 676 A.2d 774, 778 (1996) (affirming judgment on rationale different from trial court where result was otherwise correct). Namely, we observed that the defendant had transferred properties to circumvent governmental regulations jeopardizing her

---

[9] Currie asserts that even if she had unclean hands, she was in pari delicto with Huber such that Huber is still barred from relief. See Austin, 33 Vt. at 557 (defining in pari delicto as "each equally guilty of a violation of the law"). Because the court did not assess whether Huber had unclean hands defense for engaging in usury, we do not reach whether either Huber or Currie had unclean hands.

12

eligibility to receive Social Security disability benefits. <u>Shattuck</u>, 2013 VT 1, ¶ 16. We concluded that "[t]he undisputed evidence demonstrates that defendant lacked the 'clean hands' necessary for an award of equitable relief." <u>Id</u>. ¶ 17.

¶ 25.    <u>Shattuck</u> is fundamentally different from this case. In <u>Shattuck</u>, the defendant did not assert unclean hands against the plaintiff. Rather, the defendant argued that she herself deserved equitable relief, and we denied her request due to her unclean hands. In contrast, here, Currie asserted unclean hands as connected to usury to bar Huber from obtaining relief. The court concluded that Currie failed to properly assert the usury defense against Huber, and the court did not address whether Huber engaged in usury or had unclean hands. The court acted within its discretion in declining to reach these arguments, and we decline to do so as well.

¶ 26.    Last, Currie argues that the court erred in neglecting to consider or issue any ruling on her claims against third-party defendants. We agree. Although Currie did not raise the issue of third-party defendants in her post-trial brief as instructed, the court had ample notice of this issue and indicated at trial that it would address the third-party claims. Because a final ruling on Currie's claims against third-party defendants is still outstanding, we remand for the court to consider them. Cf. <u>Associated Mortg. Invs. v. Haystack Corp.</u>, 140 Vt. 125, 129, 435 A.2d 964, 966 (1981) (remanding case to trial court where third-party complaint was not properly dismissed, either expressly or impliedly).

<u>The judgment in favor of Huber is affirmed. The matter is remanded for further proceedings as to the third-party claims</u>.

FOR THE COURT:

---

Associate Justice

13